IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| LORI S. ORPIANAO, | ) | |
| *pro se* Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:17cv576 (JAG) |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

On May 20, 2013, Lori S. Orpiano ("Plaintiff") protectively applied for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from degenerative disc disease, fibromyalgia, bipolar disorder and depression, with an alleged onset date of May 1, 2013. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff, proceeding *pro se*, now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in (1) evaluating the opinion evidence of the state agency consultants and consultative examiner Richard J. Browne, M.D., (2) formulating the Residual Functional Capacity ("RFC"), and (3) concluding that Plaintiff could perform work existing in significant numbers in the national economy. (Pl.'s Mot. for Summ. J. Mem. ("Pl.'s Mot.") (ECF No. 12) at 1.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for

summary judgment, rendering the matter ripe for review.[1]  For the reasons that follow, the Court

recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) be GRANTED, that

Defendant's Motion for Summary Judgment (ECF No. 16) be DENIED and that the final

decision of the Commissioner be REVERSED and REMANDED.

## I.     PROCEDURAL HISTORY

On May 20, 2013, Plaintiff filed an application for SSI with an alleged onset date of May

1, 2013.  (R. at 10, 89.)  The SSA denied these claims initially on December 18, 2013, and again

upon reconsideration on May 28, 2014.  (R. at 101, 120.)  At Plaintiff's written request, the ALJ

held a hearing on October 16, 2015.  (R. at 31-68, 133-34.)  On December 29, 2015, the ALJ

issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify

as disabled under the Act, because she could perform jobs existing in significant numbers in the

national economy.  (R. at 10-18.)  On June 23, 2017, the Appeals Council denied Plaintiff's

request for review, rendering the ALJ's decision as the final decision of the Commissioner

subject to review by this Court.  (R. at 1-3.)

## II.     STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the

Social Security Administration's disability determination 'when an ALJ has applied correct legal

standards and the ALJ's factual findings are supported by substantial evidence.'"  *Mascio v.

Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

---

[1]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc.
R. 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal
identifiers such as Plaintiff's social security number, the names of any minor children, dates of
birth (except for year of birth), and any financial account numbers from its consideration of
Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to
only the extent necessary to properly analyze the case.

337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a

preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as

adequate to support a conclusion.  *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig*

*v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Indeed, "the substantial evidence standard

'presupposes . . . a zone of choice within which the decision makers can go either way, without

interference by the courts.  An administrative decision is not subject to reversal merely because

substantial evidence would have supported an opposite decision.'"  *Dunn v. Colvin*, 607 F.

App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir.

1988)).  To determine whether substantial evidence exists, the court must examine the record as

a whole, but may not "undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of the [ALJ]."  *Hancock*, 667 F.3d at 472

(quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).  In considering the decision of

the Commissioner based on the record as a whole, the court must "take into account whatever in

the record fairly detracts from its weight."  *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th

Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  The

Commissioner's findings as to any fact, if substantial evidence in the record supports the

findings, bind the reviewing court to affirm regardless of whether the court disagrees with such

findings. *Hancock*, 667 F.3d at 477.  If substantial evidence in the record does not support the

ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision.

*Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

      The Social Security Administration regulations set forth a five-step process that the

agency employs to determine whether disability exists.  20 C.F.R. § 416.920(a)(4); *see Mascio*,

780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation).  To summarize, at step

one, the ALJ looks at the claimant's current work activity.  § 416.920(a)(4)(i).  At step two, the

ALJ asks whether the claimant's medical impairments meet the regulations' severity and

duration requirements.  § 416.920(a)(4)(ii).  Step three requires the ALJ to determine whether the

medical impairments meet or equal an impairment listed in the regulations.  § 416.920(a)(4)(iii).

Between steps three and four, the ALJ must assess the claimant's residual functional capacity

("RFC"), accounting for the most that the claimant can do despite her physical and mental

limitations.  § 416.945(a).  At step four, the ALJ assesses whether the claimant can perform her

past work given her RFC.  § 416.920(a)(4)(iv).  Finally, at step five, the ALJ determines whether

the claimant can perform any work existing in the national economy.  § 416.920(a)(4)(v).

## III.    THE ALJ'S DECISION

On October 16, 2015, the ALJ held a hearing during which Plaintiff (then represented by

counsel) and a vocational expert ("VE") testified.  (R. at 31-68.)  On December 29, 2015, the

ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act.  (R.

at 10-18.)

The ALJ followed the five-step evaluation process established by the Social Security Act

in analyzing Plaintiff's disability claim.  (R. at 12-18.)  At step one, the ALJ found that Plaintiff

had not engaged in substantial gainful activity since May 20, 2013.  (R. at 12.)  At step two, the

ALJ determined that Plaintiff suffered from the following severe impairments:  cervical and

lumbar degenerative disc disease, fibromyalgia, morbid obesity, osteoarthritis of the bilateral

knees, peripheral neuropathy, left carpal tunnel syndrome, depression and anxiety.  (R. at 12.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments in 20

C.F.R. Subpart P, Appendix 1.  (R. at 13.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work with additional limitations. (R. at 14.) Plaintiff had to change positions between sitting and standing approximately every thirty minutes while remaining on task. (R. at 14.) Plaintiff could occasionally climb, but never climb ladders, ropes or scaffolds. (R. at 14.) Plaintiff could occasionally balance, stoop, kneel, crouch and crawl. (R. at 14.) Plaintiff could not tolerate exposure to hazards such as unprotected heights or moving machinery. (R. at 14.) She could frequently, but not constantly, handle, finger and feel, and she could understand, remember and carry out simple and routine work-related tasks, and concentrate for periods of two hours on work-related tasks before requiring a break. (R. at 14.) Plaintiff could work with general public, co-workers and supervisors occasionally. (R. at 14.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (R. at 17.) At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 17-18.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 18.)

## IV.    ANALYSIS

Plaintiff, age fifty-six at the time of this Report and Recommendation, previously worked as a cashier and in records management. (R. at 212.) She protectively applied for Social Security Benefits, alleging disability from degenerative disc disease, fibromyalgia, bipolar disorder and depression, with an alleged onset date of May 1, 2013. (R. at 89.) Plaintiff's appeal to this Court alleges that the ALJ erred in (1) evaluating the opinions of the state agency consultants and Dr. Browne, the consultative examiner, (2) formulating the RFC, and (3) concluding that Plaintiff could perform work existing in the national economy. (Pl.'s Mot. at 1.) For the reasons set forth below, the ALJ erred in his decision.

A.   **The ALJ Erred in Evaluating the Opinion Evidence.**

In her appeal to this Court, Plaintiff states, "I have seen the doctors from social security and they have deemed me disabled." (Pl.'s Mot. at 1). The Court interprets Plaintiff's statement as a challenge to the weight afforded to the opinions of the state agency consultants and consultative examiner Dr. Browne. Defendant responds that substantial evidence supports the ALJ's assessment of the medical opinions. (Def.'s Mot. for Summ. J. and Mem. in Supp. (Def's Mem.) (ECF No. 16) at 16-17.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. 20 C.F.R. §§ 416.912, 416.927. When the record contains a number of different medical opinions, including those from the claimant's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. §416.927(c). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. §§ 416.927(c)(2)-(6), (d).

When considering a treating source's opinion, the ALJ must evaluate those findings just as any other medical opinion. § 416.927(c). The ALJ "will always give good reasons . . . for the weight . . . give[n to a] treating source's medical opinion." § 416.927(c)(2). Determining the specific weight of medical opinions is especially important, because the regulations further require a comparative analysis of competing medical opinions. *See, e.g.*, § 416.927(c)(1)

("Generally, [the Commissioner] give[s] more weight to the medical opinion of a source who has examined [plaintiff] than to the medical opinion of a medical source who has not examined [plaintiff].")

Requiring an ALJ to assign specific weight to medical opinions is necessary, because a reviewing court "faces a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence." *Arnold v. Sec'y of Health Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977). Unless the Commissioner "has sufficiently explained the weight [s]he has given to obviously probative exhibits, to say that h[er] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Id.* (quoting *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)) (internal quotation marks omitted). The assignment of weight needs to be sufficiently specific "to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . source's medical opinion and the reasons for that weight." SSR 96-2p (discussing affording weight to treating physician).[2] Accordingly, a reviewing court cannot determine if substantial evidence supports an ALJ's findings "unless the [ALJ] explicitly indicates the weight given to all the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (citing *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980); *Strawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979); *Arnold*, 567 F.2d at 259).

---

[2]     Effective March 27, 2017, the SSA rescinded SSR 96-2p and 06-3p, instead incorporating some of the Rulings' policies into 20 C.F.R. § 416.927(f). 82 Fed. Reg. 5844-01, at 5844-45 (Jan. 18, 2017). Plaintiff filed her claim on May 20, 2013, before this regulation took effect. (R. at 89.) The Agency does not have the power to engage in retroactive rulemaking. *Compare Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to promulgate retroactive rules due to its disfavored place in the law), *with* 42 U.S.C. § 405(a) (granting the Agency general power to make rules, but not granting retroactive rulemaking power). Because the regulation does not have retroactive effect, SSR 06-03p applies to Plaintiff's claim.

### 1.   The ALJ Did Not Err in Affording Dr. Browne's Opinion Slight Weight.

Plaintiff presented to Dr. Browne on May 6, 2014, on referral for a mental consultative examination.  (R. at 648.)  During the interview, Dr. Browne described Plaintiff as "tearful at times" and apparently under some distress.  (R. at 648.)  Dr. Browne noted that Plaintiff's mood fluctuated and she tended to ramble. (R. at 648.)  Dr. Browne described Plaintiff's grooming as "fair" and noted that she dressed in seasonally appropriate attire.  (R. at 652.)  Plaintiff rambled during some of her responses to Dr. Browne's questions and had to refocus a few times.  (R. at 652.)  Dr. Browne described these tendencies as "mild evidence of psychomotor excitement," but he noted no evidence of psychomotor retardation.  (R. at 652.)  Plaintiff had to stand at one point during the interview due to back pain, but Dr. Browne opined that Plaintiff's restlessness related more to emotional distress, rather than physical discomfort.  (R. at 652.)  Dr. Browne noted that, after taking a few steps, Plaintiff ambulated without difficulty.  (R. at 652.)

Dr. Browne observed that Plaintiff maintained appropriate eye contact and spoke fluently with normal volume and a "somewhat fast" rate.  (R. at 652.)  Although Plaintiff displayed a variable mood and appeared emotionally distressed at times during the interview, Dr. Browne noted that she could also compose herself.  (R. at 652-53.)  Plaintiff appeared alert and oriented, and she displayed a generally logical, at times "tangential," thought organization.  (R. at 652-53.) Plaintiff denied experiencing — and Dr. Brown observed no evidence of — hallucinations, illusions, delusions or suicidal ideation.  (R. at 653.)

Dr. Browne opined that Plaintiff functioned in the low-average range intellectually.  (R. at 653.)  Plaintiff had a mild-to-moderate impairment of her remote memory, but Dr. Browne described her recent memory as essentially intact.  (R. at 653.)  Dr. Browne concluded that Plaintiff maintained a marginal capacity to interact with co-workers and the general public and

could not tolerate more than minimal stress. (R. at 653.) Based on his review of the medical records and observations, Dr. Browne opined that Plaintiff could perform simple and repetitive tasks, but not on a consistent basis; thus, Dr. Browne found it "doubtful" that Plaintiff could maintain regular attendance in the workplace. (R. at 653.)

The ALJ afforded Dr. Browne's opinion only slight weight. (R. at 16.) The ALJ agreed that Plaintiff could perform simple and repetitive tasks, but found that Plaintiff's mental health treatment records and mental status examinations supported Plaintiff's ability to persist and sustain work activity. (R. at 16.) Substantial evidence supports the ALJ's assignment of weight.

Progress notes from Plaintiff's psychotherapy sessions at Crossover Healthcare Ministry ("CHM") dated from August 2013 through August 2014 show that Plaintiff consistently appeared alert and oriented. (R. at 507-09, 511, 514, 739, 743-45, 748, 750, 752-55.) On August 9, 2013, Plaintiff appeared anxious and had rapid speech, but she returned to CHM on August 16, 2013, displaying a positive mood and affect. (R. at 510, 514.) On October 25, 2013, Plaintiff displayed a normal mood and affect, but reported experiencing a panic attack since her previous visit. (R. at 507.) Plaintiff presented with a tearful affect due to family conflict on October 15, 2013, but she displayed an appropriate mood and affect on October 25, 2013. (R. at 507-08.)

On December 19, 2013, Plaintiff presented with an anxious mood and tearful affect, but treatment notes also described her as "goal-directed." (R. at 752.) Plaintiff denied suicidal and homicidal ideations, but felt stress over her mother's illness. (R. at 752.) When Plaintiff returned to CHM on December 27, 2013, Plaintiff again displayed a tearful affect and felt upset due to the declining health of her mother. (R. at 751.) These feelings continued with the passing of Plaintiff's mother in January 2014. (R. at 750.)

Plaintiff reported experiencing grief, anxiety and depression during a psychotherapy session on January 17, 2014. (R. at 750.) Plaintiff displayed a "flat affect" on February 7, 2014, and the CHM care provider observed a "noticeable" difference in Plaintiff's mood. (R. at 748.) Although Plaintiff felt "bewildered by grief," she avoided family conflict and denied suicidal ideation. (R. at 748.) By February 28, 2014, Plaintiff's mood improved and she reported journaling daily, as recommended by treating staff at CHM. (R. at 745.) Plaintiff's counselor noted that Plaintiff "[was] making good progress" on March 7, 2014. (R. at 744.) Plaintiff continued to display an appropriate mood and affect during her appointments in March, April, May and August 2014. (R. at 735-42.) These treatment notes show that Plaintiff struggled with depression, anxiety and grief as she dealt with her mother's illness and death, as well as family conflict; however, Plaintiff used tools such as journaling to work through her issues, and her care providers noted Plaintiff's progress. Plaintiff repeatedly appeared alert and oriented and often displayed a normal mood and affect. These records do not support Dr. Browne's opinion that Plaintiff could not sustain regular attendance in the workplace.

Plaintiff also had normal mental status examinations during medical appointments related to her physical condition. On March 4, 2013, Plaintiff presented to the emergency department at Virginia Commonwealth University ("VCU") Health System, complaining of chronic right knee pain. (R. at 337.) On examination, Cary Shomo, R.N., noted that Plaintiff appeared alert and oriented, made eye contact, and displayed appropriate, calm, cooperative behavior. (R. a 339.) Plaintiff made no behavioral or emotional complaints. (R. at 339.) On March 9, 2013, Plaintiff returned to VCU Health System, complaining of pain after falling down a handicapped ramp. (R. at 302-04.) She appeared alert and oriented, cooperative, in no acute distress, and displayed an appropriate mood and affect. (R. at 303-04, 315.)

10

Plaintiff again appeared alert, oriented, and displayed an appropriate mood and affect when she returned to VCU Health System in September and November 2013 for preoperative appointments in preparation of having her spinal cord stimulator removed. (R. at 482, 586.) On January 24, 2014, Plaintiff presented to Thomas Roe III, R.N., complaining of worsening pain after the removal of her spinal cord stimulator. (R. at 632.) Plaintiff made eye contact and displayed appropriate, calm and cooperative behavior. (R. at 633-34.)

Plaintiff's progress notes from CHM and normal mental status examinations constitute substantial evidence supporting the ALJ's decision to afford slight weight to Dr. Browne's opinion.

### 2. The ALF failed to explain his reasoning for affording significant weight to the opinions of the state agency consultants.

State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in Social Security disability evaluation. 20 C.F.R. § 416.913a(b)(1). Therefore, when considering the opinion of a state agency consultant, the ALJ must evaluate those findings just as he would for any other medical opinion. § 416.913a(b)(1). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ is required to explain the weight given to state agency opinions. § 416.927(e); *see also* § 416.913a.

On December 16, 2013, state agency psychologist Howard S. Leizer, Ph.D., completed a mental RFC assessment after reviewing Plaintiff's records. (R. at 94.) In evaluating paragraph B criteria for Listing 12.04, Dr. Leizer opined that Plaintiff suffered mild limitations in the activities of daily living, mild limitations in maintaining social functions, moderate limitations in maintaining concentration, persistence or pace, and that Plaintiff experienced one or two repeated episodes of decompensation. (R. at 94.) Dr. Liezer noted that Plaintiff had a history of mental health hospitalization in 2012 and a diagnosis of major depressive disorder. (R. at 93.)

11

Ultimately, Dr. Liezer concluded that Plaintiff would have some difficulty with concentration, persistence or pace, but that she could sustain simple, routine work. (R. at 93, 98.)

Also on December 16, 2013, state agency physician Bert Spetzler, M.D., completed a physical RFC assessment for Plaintiff. (R. at 95-97.) Dr. Spetzler opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, walk or stand for six hours, and sit for six hours during an eight-hour workday. (R. at 96.) Dr. Spetzler found that Plaintiff could occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, frequently balance, and occasionally stoop, kneel, crouch or crawl. (R. at 96.) Dr. Spetzler concluded that Plaintiff could perform unskilled light work. (R. at 99.)

On reconsideration, state agency psychologist Eric Oritt, Ph.D., completed a mental RFC evaluation, dated May 28, 2014. (R. at 116.) Dr. Oritt found that Plaintiff had symptoms of depression and anxiety with a low stress tolerance. (R. at 116.) In evaluating paragraph B criteria for Listing 12.04, Dr. Oritt opined that Plaintiff suffered mild limitations in the activities of daily living, moderate limitations in maintaining social functions, moderate limitations in maintaining concentration, persistence or pace, and that Plaintiff experienced one or two repeated episodes of decompensation. (R. at 111.) Addressing Dr. Browne's opinion, Dr. Oritt stated that Dr. Browne overestimated the severity of Plaintiff's restrictions and limitations, and that his opinion only constituted a "snapshot" of Plaintiff's functioning. (R. at 117.)

State agency physician Joseph Duckwall, M.D., also completed a physical RFC assessment on May 28, 2014. (R. at 112.) Dr. Duckwall made the same findings as Dr. Spetzler with respect to Plaintiff's exertional and postural limitations. (R. at 96, 114.) Additionally, Dr. Duckwall found that Plaintiff had environmental limitations and that she should avoid

concentrated exposure to hazards, such as machinery and heights. (R. at 114.) Like Dr. Spetzler,

Dr. Duckwall concluded that Plaintiff could perform unskilled light work. (R. at 117-18.)

The ALJ afforded significant weight to the state agency consultants' opinions, stating

only the following —

> Social Security Ruling 96-6p requires that the opinions of state agency medical
> and psychological consultants be treated as expert opinion evidence from
> nonexamining sources. The undersigned is not bound by the conclusions of these
> nonexamining sources, but has considered their opinions and given them
> significant weight. These medical experts have indicated that the claimant has the
> necessary mental and physical residual functional capacity to perform unskilled
> light work.

(R. at 16.) Because the ALJ did not afford controlling weight to any treating physician's

opinion, the regulations require the ALJ to explain why he afforded the state agency consultants'

opinions significant weight.[3]  § 416.927(e); *see also* § 416.913a. The lack of explanation here

requires remand. *See, e.g.*, *Wilson v. Astrue*, 2012 WL 4717873, at \*14 (E.D. Va. Oct. 1, 2012)

(remanding due to ALJ's inadequate explanation of why he afforded significant weight to state

agency physicians' opinions).

In *Wilson*, the ALJ afforded the state agency medical consultants significant weight,

because those opinions "[were] consistent with the record as whole." *Id.* at \*10, \*14. The Court

held that this inadequate explanation precluded judicial review of the ALJ's opinion. *Id.* at \*14.

Here, the ALJ provided even less of an explanation than the ALJ in *Wilson*, stating only that he

considered the opinions of the state agency medical consultants, which indicated that Plaintiff

---

[3]      The only treating source opinion of record came from Renee Hammel, N.P., who wrote a
letter requesting that Plaintiff be excused from jury duty due to her difficulty sitting for
prolonged periods, and because Plaintiff required time to adjust to new psychiatric medication.
(R. at 16, 673.) The ALJ afforded Nurse Hammel's opinion little weight, because it lacked
support from objective medical evidence and no medical evidence noted that Plaintiff's
medication caused significant side effects. (R. at 16.)

could perform unskilled light work.  (R. at 16.)  The ALJ's lack of explanation proves

particularly troublesome in light of inconsistencies between the state agency psychological

consultants' opinions and the ALJ's findings.

For example, in evaluating Plaintiff's mental impairments, the ALJ considered whether

Plaintiff satisfied the paragraph B criteria for Listings 12.04 (depressive, bipolar and related

disorders) and 12.06 (anxiety and obsessive-compulsive disorders).  Applying the special

technique set forth in the regulations,[4] the ALJ concluded that Plaintiff had moderate limitation

in activities of daily living, moderate limitation in maintaining social functioning, moderate

limitation in concentration, persistence or pace, and no episodes of decompensation for an

extended duration.[5]  (R. at 12-13.)  To support his finding that Plaintiff did not suffer any

---

[4]     When evaluating a mental impairment asserted as a basis for disability, the ALJ must
evaluate the impairment using a special technique set forth in the regulations.  *Patterson v.
Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017).  "The special-technique
regulation affects how an ALJ evaluates and documents . . . steps 1 through 4 if [a] claimant
alleges a mental impairment." *Id.*  Under this regulation, "if the ALJ determines that a mental
impairment exists, [s]he must specify the symptoms, signs, and laboratory findings that
substantiate the presence of the impairment(s) and document [her] findings." *Id.*  The ALJ must
also document a specific finding as to the degree of limitation in each of the four broad areas of
functional limitation:  (a) activities of daily living; (b) social functioning; (c) concentration,
persistence or pace; and, (d) episodes of decompensation. *Id.*  The ALJ must determine whether
the claimant suffers from a severe mental impairment. *Id.*  The ALJ must then determine if the
severe impairment qualifies as a listed impairment. *Id.*  For severe, but not listed impairments,
the ALJ must assess the claimant's RFC and account for how the impairment affects the
claimant's work abilities. *Id.*

[5]     The regulations instruct that "[t]he term *repeated episodes of decompensation, each of
extended duration* in these listings means three episodes within 1 year, or an average of once
every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent
episodes of shorter duration or less frequent episodes of longer duration, we must use judgment
to determine if the duration and functional effects of the episodes are of equal severity and may
be used to substitute for the listed finding in a determination of equivalence." 20 C.F.R. pt. 404,
subpt. P., App'x 1, § 12.00(c)(4).

episodes of decompensation, the ALJ noted that Plaintiff did not have severe psychiatric

symptoms or require any psychiatric hospitalizations. (R. at 14.)

Both state agency psychologists also considered whether Plaintiff satisfied the paragraph

B criteria for Listing 12.04 and, in contrast to the ALJ, found that Plaintiff experienced "one or

two" repeated episodes of decompensation, each of extended duration. (R. at 13, 94, 111.) On

September 24, 2012, Plaintiff voluntarily admitted herself to Poplar Springs Hospital due to

depression and experiencing suicidal ideations after her husband left her. (R. at 290.) She stated

that she wanted to take her life by going to the train tracks by her house. (R. at 290.) By

October 1, 2012, Plaintiff's condition improved through a course of treatment that included

medication stabilization, supportive psychotherapy groups and case management, and the

hospital discharged Plaintiff accordingly. (R. at 291.) The state agency psychologists both

acknowledged Plaintiff's 2012 mental health hospitalization in their discussion of the evidence.

(R. at 93, 110.) The ALJ, on the other hand, stated that Plaintiff had not required any psychiatric

hospitalizations. (R. at 14.)

The Court cannot speculate why the ALJ afforded the state agency psychologists'

opinions significant weight, but declined to adopt their findings that Plaintiff experienced one or

two episodes of decompensation. Nor can the Court make sense of the ALJ's statement that

Plaintiff had not required any psychiatric hospitalizations, when Plaintiff spent a week in the

hospital for depression and suicidal ideations in 2012. It may be possible that, because Plaintiff

*voluntarily* committed herself to Poplar Springs Hospital, the ALJ did not deem this a "required"

psychiatric hospitalization, but the Court cannot engage in such conjecture. *See Fox v. Colvin*,

632 Fed. App'x 750, 756 (4th Cir. 2015) (unpublished) ("[I]t is not our role to speculate as to

how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would

perhaps find support in the record."); *Pearson v. Colvin*, 810 F.3d 204, 211 (4th Cir. 2015) ("Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert ..."). Rather, the duty to find facts and resolve conflicts rests with the ALJ. *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013). Thus, the ALJ's lack of explanation requires remand.

**B.** **The Court Cannot Determine Whether Substantial Evidence Supports the RFC and Corresponding Hypothetical Question Posed to the VE.**

Plaintiff argues that she "produced sufficient evidence from both a physical and mental standpoint" to establish that she cannot work. (Pl.'s Mot. at 1.) She further states that, "I was told that I could only work for four hours a day with a break every fifteen minutes, and no place would hire me under those conditions." (Pl.'s Mot. at 1.) The Court construes these statements as challenging the RFC assessment and the ALJ's step five finding that, based on the RFC, Plaintiff can perform jobs existing in the national economy. Defendant responds that the substantial evidence supports the ALJ's decision. (Def.'s Mem. at 18.)

**1. Plaintiff's Challenge to the RFC.**

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.902(e)-(f), 416.945(a)(1). The claimant's RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments based on the claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); *accord* 20 C.F.R. § 416.945(e). The ALJ "must first identify the [claimant]'s functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio*, 780 F.3d at 636 (citing SSR 96-8p). The ALJ's RFC "assessment must include a narrative discussion describing how

16

the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* (citing SSR 96-8p).

The Court will uphold the ALJ's RFC findings if substantial evidence in the record supports the findings and the ALJ has applied the correct legal standards in reaching them. *Hancock*, 667 F.3d at 472. "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295. The Court will "remand to the agency for additional investigation or explanation when we cannot evaluate the record of the basis that underlies the ALJ's ruling." *Fox*, 632 Fed. App'x at 756 (4th Cir. 2015) (quoting *Radford*, 734 F.3d at 295).

Here, the ALJ found that Plaintiff could perform light work with additional limitations. (R. at 14.) Plaintiff had to change positions between sitting and standing approximately every thirty minutes while remaining on task. (R. at 14.) Plaintiff could occasionally climb, but never climb ladders, ropes or scaffolds. (R. at 14.) Plaintiff could occasionally balance, stoop, kneel, crouch and crawl. (R. at 14.) Plaintiff could not tolerate exposure to hazards such as unprotected heights or moving machinery. (R. at 14.) She could frequently, but not constantly, handle, finger and feel, and she could understand, remember and carry out simple and routine work-related tasks, and concentrate for periods of two hours on work-related tasks before requiring a break. (R. at 14.) Plaintiff could work with the general public, co-workers and supervisors occasionally. (R. at 14.)

In formulating the RFC, the ALJ relied on the medical evidence, mental health treatment records, expert opinion evidence (i.e., the state agency consultants) and Plaintiff's reported

17

activities. (R. at 17.) The RFC largely mirrors the opinions of the state agency medical consultants. Both state agency physicians opined that Plaintiff could occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, frequently balance, and occasionally stoop, kneel, crouch or crawl. (R. at 14, 114, 96.) The ALJ included substantially similar limitations in the RFC,[6] as well as Dr. Duckwall's finding that Plaintiff should avoid concentrated exposure to hazards, such as machinery and heights. (R. at 14, 116.) With respect to Plaintiff's mental limitations, the ALJ also adopted the state agency consultants' findings that Plaintiff could carry out simple, routine tasks. (R. at 14, 93, 110.)

Because the ALJ relied on the state agency consultants' opinions to shape the RFC, but failed to explain his reasoning for affording the opinions significant weight and reconcile discrepancies between those opinions and the ALJ's own findings, the Court cannot determine whether substantial evidence supports the RFC. *See Mascio*, 780 F.3d at 637 ("Because we are left to guess about how the ALJ arrived at his conclusions on [plaintiff's] ability to perform relevant functions and[,] indeed, remain uncertain as to what the ALJ intended, remand is necessary."). Accordingly, the Court recommends remand.

## 2.  Plaintiff's Challenge to the ALJ's Step Five Findings.

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience and RFC, the claimant could perform other work existing in significant numbers in the national economy. 20 C.F.R. §§ 416.920(g), 416.966. The Commissioner can carry her burden in the final step with the testimony of a VE. § 416.966(e). During an administrative hearing, the ALJ must pose hypothetical questions to the VE that

---

[6]      In contrast to the state agency physicians' opinions, the ALJ limited Plaintiff to occasional, rather than frequent, balancing, and stated only that Plaintiff could "occasionally climb," without specifying that Plaintiff could occasionally climb ramps or stairs. (R. at 14.)

accurately represent the claimant's RFC, so that the VE can offer testimony about any jobs existing in the national economy that the claimant could perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.*

As explained above, the ALJ's failure to adequately explain the weight that he afforded to the opinion evidence precludes the Court from determining whether substantial evidence supports the RFC. Thus, the Court cannot determine whether the ALJ posed a hypothetical to the VE that adequately accounted for all of Plaintiff's impairments. Again, the Court recommends remand to the SSA for further proceedings.

## V.     CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 16) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge John A. Gibney and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure**

shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

                                        _____ /s/ _____
                                        David J. Novak
                                        United States Magistrate Judge

Richmond, Virginia
Date:  August 24, 2018